U.S.A. v. Robert Lee Houston Good morning. Thank you, Your Honor. May it please the Court. I represent Robert Lee Houston. Today we argue that his above-guideline sentence was procedurally and substantively unreasonable. Given the limited time, I will focus my argument on the standard of review and some of the reasons we argue the procedural error. Specifically, we identify three errors this morning. First, it was error for the District Court to hold the constitutionally required litigation of Mr. Houston's competency against him at sentencing. Second, it was error to inaccurately conclude that Mr. Houston himself pressed this issue when, in fact, it was his attorneys who raised it over his objection. And finally, it was error for the Court to have the description of the unloaded 12-gauge shotgun's capabilities and lethality. The Yamamoto gun. Yes, Your Honor. It's the only one the Court references at sentencing. So first, we argue the standard of review. We believe full reasonableness review is available in this case. Mr. Houston and the government fully argued the issues that we identify as error. Both parties presented a full-throated argument over the course of a very lengthy sentencing hearing, and we identify the error of the District Court in making a resolution of those arguments, which is distinguishable from the procedure identified as erroneous in United States v. Villafuerte. In Villafuerte, defense counsel failed to object at the end of a sentencing proceeding and raised for the first time on appeal that the District Court never addressed the 3553A factors or state with specificity the reasons for this sentence under 3553C. The method of sentencing, in other words, was the unobjected to error. And this Court held that plain error review would be appropriate in that circumstance, since by objecting before the District Court, it surely would have turned its attention to that matter. The District Court had its full attention on the matter, and no such objection was warranted. Is it your view that you would not prevail, at least with respect to the first two issues, if we were to disagree with you about the level of review? No, Your Honor. Mr. Houston prevails even under rigorous plain error review, though this Court has applied a less rigorous plain error review in the context of sentencing. But I will turn now to the rigorous plain error review analysis, since I think the sentence is procedurally unreasonable in that regard as well. Having identified the error, well, the familiar four-part test is first that there was error, that the error was clear and obvious, that it affected substantial rights, and then finally that it seriously affected the fairness, integrity, or public reputation of the judicial proceeding. Would you focus on the last two? Yes, Your Honor. Since the government seems to at least acknowledge that it was a misguided statement. Yes, Your Honor. It's clear that the error here did affect Mr. Houston's substantial rights. This Court recognized in COSE, C-O-S-S-E-Y, among other decisions, that errors such as these that result in the imposition of a lengthy prison term do indeed affect substantial rights. And that was true in COSE, where it was a guideline sentence, and here we have an above-guideline sentence. Furthermore, these errors do affect the fairness, integrity, and public reputation of these judicial proceedings, because the Court's sentence violated Mr. Houston's constitutional right twice over. Mr. Houston has a constitutional right to be competent, but if raising that concern, a concern over a client's competency, can later be used to justify an above-guideline sentence, or indeed any sentence, it will have a chilling effect and ultimately undermine the integrity . . . Is your argument that we can't tell from this record whether the reference to your client's efforts to seek a competency determination had an impact on the sentence, or is it your view that it demonstrably did impact the imposition of this particular sentence? It's my view that it demonstrably did impact. How do I tell that? At three different points during the sentencing, the judge references the fact that Mr. Houston raised competency only to withdraw it. The first instance, the government characterizes as sort of introducing the procedural background, but we would argue even in that instance, it was not, because he follows that there were all kinds of problems and then he withdrew it. The second instance occurs between two other . . . the discussion of the court of two other factors that the government believes relevant to the court's sentencing, namely where the judge discussed his criminal record and then also his behavior while incarcerated in the state system in the early 2000s. Sandwiched between those two factors is another reference to the fact that he raised competency and then withdrew it. With respect to the first one, he says we had a lot of problems with Mr. Houston. I'm not blaming him for anything. But later says . . . he does say that, Your Honor. But he later says that Mr. Houston . . . So that statement is at 227, I think. Why don't you take it under . . . Your Honor, he said . . . That's all right. Take it under advisement and when you come back, I'll give you time to address all of it. Yes, Your Honor. Thanks very much. Thank you. I believe my . . . I see my time was up. I apologize. Thank you, Your Honor. You've had extra time in fact, but it's all right. Good morning. May it please the Court. My name is Chris Cafferone. I'm an Assistant United States Attorney in the Eastern District of New York and I represent the United States in this appeal. I wanted to address Ms. Mariano's argument. She focused . . . Your Honor had asked her about the last two on the plain error standard and I wanted to address that. The District Court's passing remarks about the defendant's competency, they occurred in three different places. The first two were to explain the procedural posture. The Second Circuit had remanded the case to determine a competency evaluation. Nothing improper about that. You cannot show that there's a demonstrable impact on the sentence. The other was referencing the defendant's criminal history and then went into how the defendant suffered from mental health issues. The third time the Court referenced it was in the context of doing the 3553A analysis. But what I would say there is while that was a misguided remark, it certainly does not demonstrate that the sentence was in any way enhanced by the defendant's exercise. How do we know that? Because if you look at the sentencing hearing, this was a long extended hearing. The Court posed a rhetorical question and used the words, ever given. What respect for the law has this defendant ever given? I think that relates back. It shows that the Court was well aware that this defendant, he had previously said, had 38 disciplinary violations while incarcerated. Had this long criminal history. He has shown absolutely zero respect for the law. So when he's posing that question, he's saying, this defendant has no respect for the law. This is his fourth felony conviction. He was 32 years old at the time of the incident arrest. He was incarcerated for a significant period of his adult life. One of those sentences I believe he was sentenced to five or six years in custody. He's repeatedly violated probation. The underlying probation, the probation officer for one of the underlying state offenses described him as a nightmare. But the framework for this of course was the original remand with the mandate that the district court judge, and I was on that panel and I recall the case, with the mandate that the district court judge determine competency. Right? Rightly or wrongly, the defendant here made a stink about trying to get competency and then he withdrew that or his counsel withdrew that. I understand it. But then the district court judge during the sentence, and this is what we've got on the screen, complained about the fact that at some point the defendant whom he's sentencing asked for and complained about the competency issues that we had mandated be looked into. Why shouldn't we remand at least to rest assured that the sentencing judge did not consider that at all? I think for several reasons, Your Honor. First, the totality of the oral pronouncement of the sentence makes it clear that the court was most focused on the defendant's long and tortured criminal history, that he was focused on the thirty-eight disciplinary violations, that he was focused on a dangerous weapon in the hands of a self-admitted bloods member who was also selling drugs. An extremely serious offense when you combine all those factors. The court spent most of that sentencing hearing discussing those perfectly appropriate and congressionally mandated because they do touch on so many of those thirty-five, fifty-three A factors. The other thing I would say is it's unnecessary, and this is one where we disagree on the standard of review because had defense  court an opportunity to explain that its sentence was not being increased or in any way was the sentence imposed based on the constitutional exercise of the defendant's right to challenge the competency. This is a perfect example of why you need to object at that time. And they had the opportunity to do it. They had the opportunity to do it before he formally imposed sentence. The district court asked at the end of the sentence as well. They certainly had an opportunity before the judgment was entered or after the judgment was entered so that the court could have taken the opportunity to say I presided over this case since its inception. I've been with this defendant for years. I've reviewed three different expert opinions on this defendant's mental health. A number of which mention that this defendant has characteristics of malingering. This defendant was an obstinate defendant that the district court witnessed during trial. Him have the ability and the capability to maintain his composure, to interact with his defense attorney when he was given clear guidance that if he had done otherwise, he would have been watching the trial in a closed circuit, in a room with a closed circuit TV. This defendant at all stages in the proceeding had the ability to control himself. When he was reviewed down in Butner on two occasions, they had done extensive interviews of him. They reviewed the testimony from his civil proceeding where he testified before Judge Bianco and Judge Bianco made observations of the defendant's ability to answer questions, to understand the nature of proceeding, to understand when he was getting cross examined in an area that he didn't feel he should have to respond to, he would look over at his attorney. He would look over at Judge Bianco. This was a difficult defendant and the district court was well positioned to understand this was a difficult defendant, was well positioned to understand you have a dangerous individual with violent proclivities. When there's a mandate, just to go to an issue that was not addressed by appellant's counsel, when there is a mandate from our court directing the district court to determine competency, can the parties waive that? I believe so, Your Honor. I will have to get back to you on that authority. When we were down at the district court, they withdrew their request and we, after consulting with defense counsel, we thought they had the authority. I have not. I must admit I haven't researched it because it wasn't an issue that was raised either on appeal and defense counsel believed that that was permissible. I don't have the authority now. It hasn't been raised now? It has not been raised now. It wasn't raised at the district court level. You mentioned Butner, which is a famous federal correctional institution dealing with psychiatric problems primarily. Why was he at Butner? The first time he was sent to Butner because the first defense attorney had raised an issue about the defendant's competency and that the defendant had written a letter to the court saying, just give me the death penalty. In an abundance of caution, he was sent to Butner for evaluation. The report came back and said he was competent to stand trial after significant review. He wound up coming back. He stood trial. The case gets remanded. While we're in the district court, defense counsel raises an issue about his competency.  The defendant is competent, then reverses course after consulting with defense counsel. They shared some additional documents with him. He opines that he's incompetent. District court orders him to go to a facility. He goes down to Butner again. Butner again sees different experts and again, after a much more extensive examination than Dr. Mills, the expert that was retained is concluded to be competent to stand trial and proceed to sentencing and the hearing and also that he was malingering. All of that, those examinations of Butner antedated the remand of this court? The second one did. The first one was before. The second one was after remand and the Dr. Mills expert was after remand. Then what happened was we had two expert opinions both opining that the defendant was competent to stand trial. They waived the hearing on it. We agreed. We had no doubts to the defendant's competency. He did have competency hearings. Let's put it this way. The district judge by definition imposed sentence based on the full record before him. That full record included not one but two competency examinations at Butner. One of them after the mandate was issued by our court. That's correct. So how could it be said there was no competence examination or that somebody is waiving a competence exam? I'm missing something in the chronology. Your Honor, the thing that would be missing is the retrospective determination so the competency evaluations that came after remand were dealing with his current competency, not the mandate related to retrospective. Correct. Was he competent at the time of the trial? The experts were not hired. I've had quite a few of these cases over the years. How would anybody be able to make that determination? The retrospective determination that X number of years earlier he was competent. I believe what we would have done was we represented testimony from his attorney. The court had made observations. I made observations. The defendant, like I said, was able to sit quietly. He was interacting with his attorney, passing notes. The defense attorney was cross-examining him using some of those notes. I think we would have been able to call the defense attorney, say he was able to interact and communicate and understood the nature of the proceedings. That's often what happens in retrospective determinations, right? I believe that's what would have happened had the defendant pressed for it and not waived it. So unless there's additional questions, we'll rest on our papers. Thank you. Thank you. So just to turn back to our previous discussion, on the joint appendix page 176, sandwiched between the court's consideration of criminal history. Yes, Your Honor. Sandwiched between the court's consideration of Mr. Houston's criminal history and his behavior while incarcerated in the state system is a reference to quote, the defendant has a long record of alleged mental incompetency which ended with him withdrawing his charge of mental incompetency. Then again on page 177, it is at line 10, 11, and 12. 176? Yes, joint appendix 176. The transcript number is page 49. Lines 10 to 12. On the next page at line 7 through 10, the court again says the circuit remanded this competency to suggest a full retrospective determination including a hearing as to competency, but he's withdrawn the request. But then most telling . . . Were you with counsel at that point? I was. Most telling, the joint appendix at 179, the top of the page, continuing quote, to promote the respect for law. What respect for law has this defendant ever given? Starts off with competency hearing and withdraws it after all kinds of effort was made to help him. The court did not rely or look to the mental illness that Mr. Houston suffers, indisputably suffers, outlined in the pre-sentence report and the multiple competency reports. Instead, the court held against Mr. Houston the fact that his attorneys, over his objection, raised an issue as to his current competency. You don't feel, having been in all these proceedings, don't you feel a bit awkward making this argument now? No, Your Honor, I do not. And the reason is this, at our initial appeal, so Mr. Cafferon has referenced the two studies from Butner, but when Mr. Houston was originally sentenced, and I didn't handle his original trial case, only his first appeal, he was designated to FCI Gilmore to serve the original sentence imposed. Within a month of arriving at Gilmore, he was diagnosed to be psychotic, delusional, in fact it was quote, floridly psychotic, and put in the shoe for six months, awaiting an emergency transfer to FMC Devins, another mental health institution. He was, in fact, transferred to Devins where they found he was suffering from delusions, and in fact, there's an episode of forced medication. That all occurred while I was representing him on appeal, our initial appeal before this court. So, I raised the issue of competency based on the record before the trial court, and also because of my own interactions with Mr. Houston. When this court remanded on the competency issue, of course, the first thing I had to ensure was that Mr. Houston was presently competent to move forward with that proceeding. And he was again examined, as Mr. Cafferon has already outlined, by our jointly retained expert, Dr. Mills, and then again at Butner. And ultimately, it was determined he was presently competent. And you have no claims on that basis? I do not. And because the client, who repeatedly put on the record that he did not want to pursue the competency issue, was presently competent, and could articulate his reasons why . . . He wanted to pursue the competency issue with respect to the . . . Retrospective. Retrospective determination. Yes. So that's abandoned on appeal? It is. It is. Okay. What else do you have to tell us? Well, I have overstepped my time. No, that's fine. We're delighted to see you. I wanted to ask you a simple clerical question. How do you come to insinuate yourself into the Eastern District of New York? Yes, well . . . From Buffalo. You're always welcome. I'm here arguing error on the part of the court, and that actually was error on my part. On the remand, the Jacobson remand, I thought it would go back to the original panel. And since I was appellate counsel, I felt that I should remain in the case. You had been located in the Eastern District at that point? No, I'm the Federal Defender for the Western District of New York. I know, and that's why I'm curious how you got into this case to begin with. When it was returned for a retrospective determination, I thought I would be appearing back before the original panel after that determination. No, but I . . . Yes, Your Honor. Yes, Your Honor's panel with Chief Judge Katzman and Judge Droney. And my response to that, I asked Judge Spat if he would allow me to remain in the case with local counsel Matthew Brisseton, an excellent CJA attorney. The judge was happy to do so. My office was able to handle some of the expert expenses. I was grateful for the opportunity. But your original involvement in this case came when? Oh, yes, Your Honor. We accept direct assignments from the circuit. My office will accept direct assignments from the circuit from whatever district they come. Thank you. Thank you very much. Thank you, Your Honor. You're reserved this evening. Thank you.